# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CAYUGA NATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 20-cv-2642 (ABJ)** |
| | ) | |
| U.S. DEPARTMENT OF THE | ) | |
| INTERIOR, BUREAU OF INDIAN | ) | |
| AFFAIRS, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR
## SUMMARY JUDGMENT

Gabriel M. Nugent (DC Bar No. 1005924)
BARCLAY DAMON LLP
125 East Jefferson Street
Syracuse, New York 13202
Tel.: (315) 425-2836
Fax: (315) 703-7361
gnugent@barclaydamon.com

David W. DeBruin (DC Bar No. 337626)
Zachary C. Schauf (DC Bar No. 1021638)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
Tel.: (202) 639-6000
Fax: (202) 639-6066
ddebruin@jenner.com

*Attorneys for the Cayuga Nation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 1

I.    The Nation Is Entitled to Summary Judgment on Count I Because the Government Cannot Defend the Adequacy of Its Search. ...................................................... 1

    A.    The Government Does Not Defend the Adequacy of Its Search. ........................... 1

    B.    The Nation Did Not Waive Its Challenge to the Adequacy of the Search. ............ 2

        1.    No Express or Implied Waiver Occurred.................................................... 2

        2.    Waiver Is Not Appropriate Because It Would Be Unjust............................ 4

II.   The Nation Is Entitled to Summary Judgment on Count II Because the Government Cannot Justify Its Withholding of Non-Exempt Agency Records. ................................. 5

    A.    The Government Cannot Justify the Withholdings in the Trip Report.................. 5

        1.    The Deliberative Process Privilege Does Not Justify Withholding the Summary of the Meeting with Local Law Enforcement....................... 5

        2.    The Attorney-Client Privilege and Work Product Doctrine Do Not Apply to the Summary of the Meeting with the U.S. Attorneys................. 8

            a.    The Government's Assertions of the Attorney-Client Privilege and Work Product Doctrine Are Inadequate. .................. 8

            b.    The Court May Consider the Government's Previous Failure to Assert the Attorney-Client Privilege and Work Product Doctrine....................................................................... 11

    B.    The Government Cannot Justify the Redaction of the Briefing Report Under Any Exemption. ............................................................................... 13

        1.    Exemption 7(D) Does Not Justify the Redaction of the Briefing Report.................................................................................... 13

        2.    Exemption 5 Does Not Justify the Redaction of the Briefing Report........ 14

        3.    Exemptions 6 and 7(C) Do Not Justify the Redaction of the Briefing Report.................................................................................... 15

CONCLUSION................................................................................................ 17

# TABLE OF AUTHORITIES[*]

## Cases

*American Center for Law & Justice v. United States Department of Justice*, 325 F.
Supp. 3d 162 (D.D.C. 2018) ............................................................................... 2-3, 4

*Arthur Anderson & Co. v. IRS*, 679 F.2d 254 (D.C. Cir. 1982)...........................................5

*Bristol-Meyers Co. v. FTC*, 598 F.2d 18 (D.C. Cir. 1978) ................................................5

*Bartko v. United States Department of Justice*, 898 F.3d 51 (D.C. Cir. 2018)............................10

*Carter v. United States Department of Commerce*, 830 F.2d 388 (D.C. Cir. 1987).....................10

*Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.D.C. 2015)....................................................7, 11

*Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1 (D.D.C. 2019) ....................................................8

\* *Citizens for Responsibility & Ethics in Washington v. United States Department
of Justice*, No. CV 19-1552, __F. Supp. 3d __, 2021 WL 2652852 (D.D.C. May
3, 2021), *appeal docketed*, No. 21-5113 (D.C. Cir. May 25, 2021) ........................... 7-8, 9, 15

*Citizens for Responsibility & Ethics in Washington v. United States Department of
Justice*, 854 F.3d 675 (D.C. Cir. 2017)......................................................................16

*Citizens for Responsibility & Ethics in Washington v. United States Department of
Justice*, 746 F.3d 1082 (D.C. Cir. 2014)......................................................................16

*Department of Air Force v. Rose*, 425 U.S. 352 (1976) ................................................................6

*Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989) ................................................................12

*Hooker v. U.S. Dep't of Health & Human Services*, 887 F. Supp.2d 40 (D.D.C.
2012), *aff'd*, No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014)..............................16

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ................................................................10

*National Security Counselors v. CIA*, 960 F. Supp. 2d 101 (D.D.C. 2013), *aff'd*,
969 F.3d 406 (D.C. Cir. 2020)......................................................................................10

*Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885 (D.C.
Cir. 1995)......................................................................................................................16

\* *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir.
2021) ................................................................................................................7, 8, 15

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

* *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991)............................................5, 15

*Senate of Puerto Rico ex rel. Judiciary Committee v. United States Department of Justice*, 823 F.2d 574 (D.C. Cir. 1987)...................................................................................5

*Shapiro v. United States Department of Justice*, No. 13-555 (RDM), 2016 WL 3023980 (D.D.C. May 25, 2016) ...................................................................................4

*Sussman v. United States Marshals Service*, 494 F.3d 1106 (D.C. Cir. 2007) ..............................2

*United States Department of Justice v. Landano*, 508 U.S. 165 (1993) .......................................14

*\*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ..................................................................6, 7

*Williams & Connolly LLP v. SEC*, 729 F. Supp. 2d 202 (D.D.C. 2010), *aff'd*, 662 F.3d 1240 (D.C. Cir. 2011) ...................................................................................10

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ................................................................................10

STATUTES

5 U.S.C. § 552(a)(3)...................................................................................................................4, 5

5 U.S.C. § 552(a)(4)(A)(viii)(II)(bb) .............................................................................................4

5 U.S.C. § 552(a)(6)(B)(ii) ............................................................................................................4

5 U.S.C. § 552(b)..........................................................................................................................16

5 U.S.C. § 552(b)(6) .....................................................................................................................16

5 U.S.C. § 552(b)(7)(D)................................................................................................................13

OTHER AUTHORITIES

Fed. R. Evid. 408(a)......................................................................................................................11

23 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 2021) .......................................................................................................................12

Plaintiff the Cayuga Nation (the Nation) submits this reply in support of its cross-motion for summary judgment on its claims challenging the response of the Bureau of Indian Affairs (BIA) to requests submitted by the Nation under the Freedom of Information Act (FOIA).

## INTRODUCTION

The FOIA dispute at the center of this case arises out of a sequence of significant events on the Cayuga reservation in February 2020.  Individuals had seized Cayuga Nation properties, and the Nation was forced to recover those properties on its own after state and federal officials refused to help.  These events were the subject of considerable public attention and false reports.  The BIA conducted its own review of the events, and the Nation filed a FOIA request for records concerning what the BIA learned and concluded in that review.

The government's latest brief confirms the BIA has not complied with its duties under FOIA.  First, the government does not defend the inadequacy of the BIA's search for records.  Instead, it argues only that the Nation has waived the issue, though the record does not support such a conclusion.  Second, the government continues to offer generalized and unsubstantiated justifications for its redactions and boilerplate assertions that disclosure would cause harm.  This is not enough.

## ARGUMENT

## I.     The Nation Is Entitled To Summary Judgment On Count I Because the Government Cannot Defend the Adequacy of Its Search.

### A.     The Government Does Not Defend the Adequacy of Its Search.

As the Nation explained in its opening brief, the BIA did not conduct an adequate search in response to the Nation's first FOIA request, in large part because it did not ask Jimmy Gibson and Bryan Bald Eagle for responsive records.  *See* Pl. Br., ECF No. 18-1, at 14-16.  In its brief, the government does not defend the search as adequate, effectively conceding the point.

1

**B.      The Nation Did Not Waive Its Challenge to the Adequacy of the Search.**

The government's sole response to the Nation's cross-motion for summary judgment on Count I is that the Nation has purportedly waived its right to challenge the adequacy of the search. *See* Defs. Opp. Br., ECF No. 23, at 2-5.  But the record here does not support either express or implied waiver by the Nation.  And regardless, waiver is a discretionary doctrine the Court should decline to apply here.

**1.      No Express or Implied Waiver Occurred.**

The Nation did not raise the adequacy of the search in its correspondence with the government or in joint status reports for good reason.  At that time, the Nation had no reason to believe the BIA had not conducted a proper search, and there was nothing inherently unreasonable about the fact that the Trip Report was the only document concerning the Gibson/Bald Eagle trip to the Cayuga reservation.  It was only when the government filed its motion for summary judgment and disclosed in declarations that the BIA had not asked Gibson and Bald Eagle for responsive documents, that the Nation had a basis to challenge the obvious inadequacy of the search.  The government's waiver argument, at bottom, faults the Nation for not assuming that the government had acted unlawfully.  The law, however, is the opposite:  As the government often emphasizes, the government is presumed to follow the law—including, specifically, with regard to its obligations under FOIA.  *See*, *e.g.*, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation [under FOIA] to disclose reasonably segregable material.").  The Nation did not waive its claim by not assuming otherwise.

This case does not satisfy the stringent standard for waiver.  As the government's primary case, *American Center for Law & Justice v. U.S. Department of Justice*, 325 F. Supp. 3d 162

(D.D.C. 2018), makes clear, a party's waiver of important rights must be "knowing, voluntary, and intelligent." *Id.* at 168. This ordinarily means that parties can be deemed to have waived issues only if they do so either in written form or orally on the record in court. *See id.* (citing examples). In civil litigation, courts usually hold parties to their narrowing of issues at pretrial conferences. *See id.* But it is not the rule, either in this Circuit or any other, that parties are held to have silently waived entire claims in joint status reports.

At no point did the Nation affirmatively concede the adequacy of the search or dismiss the claim in Count I of its complaint. The Joint Status Report proposed a procedure for resolving the propriety of the government's redaction of two documents but did not state that the Nation was contesting *only* those redactions or was withdrawing its challenge to the adequacy of the government's search. Joint Status Report, ECF No. 13. It was silent on that score, stating:

> Plaintiff has informed Defendant that Plaintiff still challenges the adequacy of the redactions on the BIA Trip Report, and the withholding of the Office of Justice Services Internal Briefing Report entitled "Cayuga Briefing Report 03132020.doc." Accordingly, the Parties are prepared to file dispositive motions regarding the adequacy of the redactions of the BIA Trip Report and the withholding of the report entitled Cayuga Briefing Report 03132020.doc.

Joint Status Report, ¶ 5. In contrast, in the *American Center* case, the parties had submitted a status report that included a schedule for resolving the "*remaining unresolved issues*" in the case— language the court highlighted because it made clear that issues *not* mentioned in the report, including a challenge to the adequacy of the government's search, had been resolved and were no longer at issue. 325 F. Supp. 3d at 169. Not so here.

*American Center* makes clear why waiver would not be appropriate in this context. In the FOIA cases cited in *American Center* and in the government's brief, courts considered scenarios where plaintiffs had narrowed the "*scope* of their [FOIA] requests" in joint status reports and negotiations. *Id.* at 168-69 (emphasis added) (citing *DeFraia v. CIA*, 311 F. Supp. 3d 42, 47-48

3

(D.D.C. 2018); *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 22-24 (D.D.C. 2014);

*People for Am. Way Found. v. U.S. Dep't of Just.*, 451 F. Supp. 2d 6, 11-12 (D.D.C. 2006)).

Plaintiffs had expressly agreed to "limit the scope of the[ir] request[s]" as authorized by 5 U.S.C.

§ 552(a)(4)(A)(viii)(II)(bb), (a)(6)(B)(ii), and the government had relied upon those limitations.

*See DeFraia*, 311 F. Supp. 3d at 47.   The cases did not involve silent waiver of a count challenging

the adequacy of the government's search under 5 U.S.C. § 552(a)(3).

### 2.      Waiver Is Not Appropriate Because It Would Be Unjust.

Courts also will not deem an issue waived "where it would be unjust to do so." *American

Center*, 235 F. Supp. 3d at 169.   Even after parties have narrowed issues at a final pretrial

conference, a court may modify the order to prevent "manifest injustice." *Id.* (quoting Fed. R. Civ.

P. 16(e)).   On a showing of "good cause," even an issue that has been "explicitly waived in FOIA

litigation" can be reintroduced.   *Id.* (quoting *Shapiro v. U.S. Dep't of Just.*, No. 13-555 (RDM),

2016 WL 3023980, at *6-7 (D.D.C. May 25, 2016)).   This principle has been applied where the

*government* failed to timely assert a FOIA exemption and illustrates that waiver is a discretionary

equitable doctrine.[1]  *Shapiro v. U.S. Dep't of Just.*, No. 13-555 (RDM), 2016 WL 3023980, at *4

(D.D.C. May 25, 2016)).

Here, it would be unjust to deem the Nation to have waived its challenge to the adequacy

of the search after the government belatedly revealed its cursory nature.   The government did not

rely on any "narrowing" of the Nation's requests when it conducted its search, and it had a full

---

[1] After explaining the discretionary nature of the waiver doctrine, the *American Center* court explained that waiver was appropriate because the plaintiff likely would not have had a claim on the merits in any event.   As the court explained, the plaintiff's adequacy argument rested on the government's failure to produce one responsive document due to a "technical glitch" in the government's search terms, which was not enough to render the search unreasonable. 325 F. Supp. 3d at 170.   In contrast, the merits of the issue of the adequacy of the government's search cut clearly in the Nation's favor.

opportunity to respond to the Nation's summary judgment argument.  Deeming the claim waived also would undermine judicial efficiency.  Any person could submit a new request for documents related to the Gibson/Bald Eagle trip beyond the Trip Report itself, and the government would be obligated to conduct an adequate search for such documents and produce them.  5 U.S.C. § 552(a)(3).  As a practical matter, a finding of waiver would not advance either side's interests.

For these reasons, the Court should enter judgment for the Nation on Count I.

## II.    The Nation Is Entitled to Summary Judgment on Count II Because the Government Cannot Justify Its Withholding of Non-Exempt Agency Records.

### A.    The Government Cannot Justify the Withholdings in the Trip Report.

#### 1.    The Deliberative Process Privilege Does Not Justify Withholding the Summary of the Meeting with Local Law Enforcement.

At the outset, the government has not justified the redaction of the Trip Report's summary of the local law enforcement meeting on the basis of the deliberative process privilege.  It has not shown the redacted material is "predecisional" because it has not identified what decision was at issue, how the agency ordinarily makes such decisions, what role documents like the Trip Report play in such decisions, how the agency memorializes such decisions, and whether such decisions are precedential.  *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1204 (D.C. Cir. 1991); *see also Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257-59 (D.C. Cir. 1982); *Bristol-Meyers Co. v. FTC*, 598 F.2d 18, 28 n.20 (D.C. Cir. 1978).  The Gibson/Bald Eagle trip was an information-gathering venture, and the Trip Report contains no identified connection to any BIA decisional process.

The Nation does not contend, as the government claims, that the government must identify a "final" agency decision.  Rather, it must "pinpoint[]" the agency decision at issue—final or not. *Senate of Puerto Rico ex rel. Judiciary Committee v. U.S. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987).  This the government has not done.  Were it enough to assert that a document would

be used by "the writer's supervisors on a continual basis to analyze and monitor the issues," the government could shield nearly every agency document as part of an ongoing analysis of "issues." Defs. Opp. Br. at 5-6.  Construing the deliberative process privilege that expansively would undermine FOIA's purpose.  *See Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (explaining that FOIA exemptions "must be narrowly construed").

The D.C. Circuit rejected a similar argument by the government in *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975).  The court held "it is not enough to assert, in the context of Exemption 5, that a document is used by a decisionmaker in the determination of a policy."  *Id.* at 1143.  The court rejected the government's position that an "entire continuous ongoing process of management appraisal" lasting until the "final recommendations to the subject agency and its final action thereon" constituted a "deliberative process."  523 F.2d at 1145.  The government tries the same tack here in asserting the Trip Report was "used" by "the writer's supervisors" to determine "how to react," without further explanation.  Defs. Opp. Br. at 5-6; *see also id.* at 6 (characterizing the BIA as engaged in an evaluation of "issues" on a "continual basis").  *Vaughn* compels the Court to reject the government's sweeping arguments.

The government has also failed to establish the redacted material is deliberative.  As the Nation explained in its cross-motion for summary judgment, the unredacted portions of the Trip Report cast serious doubt on the government's assertions that the redactions contain the writer's "recommendations to his supervisors for future action."  *Id.* at 5 n.1.  The unredacted summaries do not contain any "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy," as required for the privilege, and the government has provided no adequate basis for concluding that the redacted summary is any

6

different.  *Cause of Action v. IRS*, 125 F. Supp. 3d 145, 159 (D.D.C. 2015) (quoting *Public Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 875 (D.C. Cir. 2010)).  "Unevaluated factual reports . . . are frequently used by decisionmakers in coming to a determination, and yet it is beyond dispute that such documents would not be exempt from disclosure."  *Vaughn*, 523 F.2d at 1143.

The government's brief further raises the question whether it is even the *writer's* impressions and opinions that have been redacted.  No other part of the Trip Report contains the writer's impressions, but the government now contends that one sentence in the Trip Report— "This now gives confusion to the November 14, 2019 letter from Tara Sweeney reiterating the Departments recognition and the right to enforce law as a nation" (which the BIA originally redacted but later released)—"actually does contain the writer's mental impressions of the 'confusion' arising from a November 14, 2019 letter from Tara Sweeney."  Defs. Opp. Br. at 8. The context in which the sentence appears, however, suggests it was local law enforcement that expressed "confusion" as a result of conflicting statements from the Departments of Justice and the Interior.  The government does not provide a declaration from the *writer* of the report to establish that the "confusion" expressed in the document was solely his own "impression."

Finally, the government still has not adequately established that it reasonably foresees that disclosure of the redacted material would harm an interest protected by the deliberative process privilege.  *See Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).  The government must provide a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Id.* at 370.  The demonstration must be document-specific: The government must explain how *this* particular withholding would harm the deliberative process if disclosed.  *Id.* at 370-72; *Citizens for Resp. & Ethics in Wash. v.*

*U.S. Dep't of Just.* (*CREW*), No. CV 19-1552, __F. Supp. 3d __, 2021 WL 2652852, at *4 (D.D.C. May 3, 2021), *appeal docketed*, No. 21-5113 (D.C. Cir. May 25, 2021).  A boilerplate assertion that "recites the elements of the privilege" and states that disclosure "would compromise the deliberative processes" is not enough.  *Id.* at *14 n.16; *see Reporters Committee*, 3 F.4th at 372.

In a supplemental declaration, the government has alluded to its real motivations.  It claims that "[i]n this matter, the Cayuga Nation is currently experiencing a dispute between two rival factions within the Nation and exposure of the writer's impression and opinions could be twisted by one side or the other as BIA's attempt to influence the internal governance of the Nation."  Smith Supp. Decl., ECF No. 23-2, ¶ 3.  This does not justify the privilege.  First, the supposed "dispute between two rival factions" has been resolved in an internal governance process Interior has formally recognized, in a decision affirmed by this Court.  *See Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1 (D.D.C. 2019).  Second, and more to the point, the BIA cannot withhold records based on speculation they may be "twisted" by others in one way or another.

### 2.   The Attorney-Client Privilege and Work Product Doctrine Do Not Apply to the Summary of the Meeting with the U.S. Attorneys.

#### a.   The Government's Assertions of the Attorney-Client Privilege and Work Product Doctrine Are Inadequate.

The second redaction in the Trip Report, which covers the summary of the meeting with the U.S. Attorneys, is not justified by the attorney-client privilege or the work product doctrine. The attorney-client privilege "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services."  *CREW*, 2021 WL 2652852, at *7 (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)).  Specifically, the privilege "protects communications that flow from attorneys to their clients, but *only if* the communications are based, at least in part, on confidential information obtained from the client."  *Id.* (emphasis

added).  "[I]t is the claimant's burden 'to present to the court sufficient facts to establish the privilege; the claimant must demonstrate with reasonable certainty . . . that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure.'" *Id.* (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).

The government has not met its burden here.  First, the government has not offered any evidence that Gibson and Bald Eagle—both relatively junior BIA officials on a fact-finding mission to the Cayuga Reservation—provided confidential information to the U.S. Attorneys "for the purpose of securing legal advice or services," and that the U.S. Attorneys subsequently engaged in communications that were based on confidential information provided by Gibson and Bald Eagle.  *CREW*, 2021 WL 2652852, at *7.  Without that, there is no privilege.  The government's conclusory statement that Gibson and Bald Eagle sought "legal advice," Smith Decl., ECF No. 16-2, ¶ 6(c), is not enough, *see CREW*, 2021 WL 2652852, at *7.

Statutes that provide that the Department of Justice *can* represent the BIA in litigation do not establish that the U.S. Attorneys *were* representing Gibson and Bald Eagle in a legal capacity or providing privileged legal advice.  The U.S. Attorneys are not "by statute" the legal representatives of all agencies and agency officials in all circumstances, conversations, meetings, and interactions, Defs. Opp. Br. at 9, and not all communications between government attorneys and government officials are protected by attorney-client privilege, *CREW*, 2021 WL 2652852, at *7.  For purposes of determining whether the privilege applies, the Court must look to the specific context of the communication, its primary purpose, the actual advice rendered, and the relationship between the parties.  *See id*.

Moreover, even if the statements of the U.S. Attorneys *were* privileged, it is likely privilege was waived, given the content of a letter from the same U.S. Attorneys to the Seneca County sheriff

the day before the meeting, precipitated by the same events.  *See* Pl. Br. at 29-30; Nugent Decl., Ex. D, ECF No. 18-6.  This is not mere "speculation," as the government contends.  Defs. Opp. Br. at 11.  The non-privileged letter was sent the *day before* the meeting and related to the same underlying events and concerns.[2]  Indeed, the author of the Briefing Report *also* contacted the U.S. Attorney's Office concerning "the legal and jurisdictional issues that the situation implicated." Leonard Decl., ECF No. 16-3, ¶ 8.  The "jurisdictional" issues the U.S. Attorneys addressed in communications with Agent Leonard and with the Seneca County sheriff (the latter of which have been publicly disclosed) are very likely the same issues the U.S. Attorneys addressed with Gibson and Bald Eagle.  These contextual factors suggest that even if the U.S. Attorneys had privileged communications with Gibson and Bald Eagle, privilege has been waived.  *See Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 198 (D.D.C. 2013), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020); *see also Williams & Connolly LLP v. SEC*, 729 F. Supp. 2d 202, 211 (D.D.C. 2010), *aff'd*, 662 F.3d 1240 (D.C. Cir. 2011).  The government has not offered a single declaration or argument to establish that the subject matter of the communications was different.  *See Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 62 (D.C. Cir. 2018) (explaining that the government bears the burden of proving an exemption applies); *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (holding that the government must provide a relatively detailed justification for the withholding).[3]

---

[2] The government's citation to *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) is inapposite.  In *Wolf*, the court held that the prior disclosure of information "does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption" in the context of a plaintiff's argument that the government had waived its ability to claim Exemptions 1 and 3 by previously acknowledging the existence of certain records.  *Id.*  The waiver of FOIA exemptions (let alone Exemptions 1 and 3) is not at issue here.

[3] At a minimum, the insufficiency of the government's explanations merits *in camera* review of the documents.  *See Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 393 (D.C. Cir. 1987).

The government's claim to the work product doctrine is even weaker. The government has provided no evidence that the summary of the meeting with the U.S. Attorneys was prepared "in anticipation of litigation or for trial." *Cause of Action*, 125 F. Supp. 3d at 158. In fact, the government has not identified any potential litigation at issue. *See* Smith Decl., ¶ 6(c) (failing to mention any potential litigation or legal proceedings, or even the subject of the meeting). It is not enough for the government to gesture to the possibility of legal "process" between third parties related to various "disputes" to claim work product protection. Defs. Opp. Br., at 10.

> **b.    The Court May Consider the Government's Previous Failure to Assert the Attorney-Client Privilege and Work Product Doctrine.**

Notably, the government did not originally assert the attorney-client privilege or work product doctrine as a basis for withholding the summary of the meeting with the U.S. Attorneys, casting further doubt on the government's belated claims to privilege. *See* Pl. Br. at 27-28. The government initially justified the redaction by stating: "The redacted portion *contains the mental impressions of Jimmy Gibson*, BIA/OJS Program Analyst, *and his interpretation of events and conversations that occurred during a briefing* he and Bryan Bald Eagle conducted with various US Attorneys. This section of text is not a mere recounting of factual events of the meeting." Nugent Decl., Ex. J, ECF No. 18-12, at 2 (emphases added). These are "deliberative process" assertions, not attorney-client or work product privilege assertions.

Federal Rule of Evidence 408 does not preclude the Court from considering the government's statement. Rule 408 provides that evidence of "conduct or statements made during compromise negotiations about the claim" is not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). But, contrary to the government's assertions, the relevant exchanges between

the parties were not "compromise negotiations."  The context matters.  After the Nation filed this lawsuit, the BIA produced certain documents, some of which were redacted or incomplete.  Nugent Decl., ECF No. 18-2, ¶¶ 15-17.  Counsel for the Nation inquired about the basis for the government's withholdings.  *Id.*, ¶ 18; Nugent Decl., Ex. J at 3.  Counsel's email included a header stating "Subject to FRE 408" and a sentence stating that the email was "sent without prejudice to other deficiencies that [the Nation] might identify."  Nugent Decl., Ex. J at 3.  The government responded with explanations for its redactions, without invoking Rule 408 or making any "compromise offer" that would be subject to the rule.  *Id.* at 2; Nugent Decl., ¶ 18.

It is clear from the text of these email exchanges that counsel for the Nation invoked Rule 408 to make clear that in asking the government for explanations for specific withholdings, the Nation was not waiving any *other* challenges (such as to the adequacy of the search).  At most, the invocation could have shielded the correspondence from being admissible had the Nation made a compromise offer in the course of the correspondence.  But it did not do so.  *Cf. Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989) (explaining that a letter that offered to discuss the facts of the case but did not furnish, promise, or accept consideration in exchange for compromising a claim did not constitute "compromise negotiations").  Government counsel did not do so either.  *Cf.* 23 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 5310, n.36 (2d ed. 2021) (suggesting that the term "negotiations" indicates that both parties must view the exchange as involving offers of compromise and remain open to considering such offers, and noting that "[i]t seems difficult to describe a unilateral process as 'negotiations'").  Instead, government counsel sought to justify the basis for the redactions.  Even if government counsel had hoped that these explanations would end the litigation, there was no settlement offer.

Compromise negotiations would have looked quite different.  For instance, if the government had offered to produce the Trip Report in full, contingent on the Nation agreeing to accept the redactions to the Briefing Report, the Nation could have been foreclosed from subsequently using that "compromise offer" as a concession by the government about whether the redactions in the Trip Report were exempt.  But no such negotiations took place here, and no such settlement offers were made.  It is not surprising, then, that government chose not to claim that its response was protected by Rule 408, as it properly was not.

## B.   The Government Cannot Justify the Redaction of the Briefing Report Under Any Exemption.

The government's attempts to justify the redaction of the Briefing Report under Exemptions 5, 6, 7(C), and 7(D) likewise fall short.[4]

### 1.   Exemption 7(D) Does Not Justify the Redaction of the Briefing Report.

The government cannot justify the redaction of the Briefing Report under Exemption 7(D), because it has provided no evidence to support that the Briefing Report was "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7)(D).  Instead, the government offers a declaration from the report's author, Agent Leonard, containing generalized assertions that do not establish that the BIA Office of Justice Services (OJS) had any law enforcement purpose or authority over the events on the Cayuga reservation.  *See* Leonard Decl., ¶ 6 ("The Briefing Report was a working document I wrote and updated several times to provide the BIA-OJS leadership with ongoing analysis about emergencies, disputes, and significant incidents at the Cayuga Nation that occurred in February and March of 2020."); *see also id.* ¶¶ 7, 9 (containing similar assertions that the report

---

[4] The government contends the dispute concerning the Briefing Report concerns non-responsive material that happens to be part of the Report—which the government concedes must be produced, unless properly exempted.  Defs. Opp. Br. 1, 11-12.  The Nation does not agree the material was non-responsive, as it relates to the very events that precipitated the Trip Report.

served to "update" agency leadership on the "developing situation"). To be sure, the BIA has the general responsibility to remain apprised of events in Indian country, and OJS has certain law enforcement responsibility on certain Indian reservations. But the agency does not claim and has not established that it had any law enforcement authority regarding the events that occurred on the Cayuga reservation. Exemption 7(D) is not a blanket exemption for every record in every agency that may, in certain circumstances, have law enforcement authority. The government's contention that "an investigation was ongoing as to whether any criminal charges could be brought" does not establish that *this* record was prepared for law enforcement purposes. Moreover, the government neglects to mention that the ongoing investigation was by the Seneca Falls Police Department, and *not* the BIA or OJS. *See* Briefing Report, ECF No. 23-6, at 2.[5]

### 2.   Exemption 5 Does Not Justify the Redaction of the Briefing Report.

With regard to Exemption 5, the Briefing Report is no more a proper subject of the deliberative process privilege than the Trip Report. The government has not identified any specific agency decision at issue, and instead gestures generally to the report's purpose as providing "ongoing analysis" of events on the Cayuga reservation for overall decisionmaking. Leonard Decl., ¶ 6; Defs. Opp. Br., at 16. As explained above, this is far from enough. *See supra* at 5-6. Agent Leonard's assertion that the BIA was considering whether to "take steps to address" a

---

[5] Beyond this fundamental point, the government misunderstands the Nation's argument. The Nation has not disputed that a state or local law enforcement official can be a "confidential source." The problem here is that the government has offered only the slightest evidence that the information in the report is properly protected as confidential. It does not matter for purposes of Exemption 7(D) that the Briefing Report contains a footer that states that the report "is the property of" the agency and that "[n]either it nor its contents may be disseminated outside the agency to which it is loaned." Briefing Report at 2. Nor does it matter that "the report and its contents are treated as confidential" at the agency. Defs. Opp. Br., at 15; *see U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 172 (1993) ("[T]he question is not whether the requested *document* is the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential.").

situation, Leonard Decl., ¶ 9, does not identify with sufficient specificity what agency decision was at issue, how the BIA ordinarily makes such decisions, what role documents like the Briefing Report play in such decisions, how the BIA memorializes such decisions, and whether such decisions are precedential in later agency decisionmaking.  *See SafeCard Servs.*, 926 F.2d at 1204.

The government's passing reference to the redacted material as being "attorney-client communication and attorney work product," without further explanation, evidence, or argument in support, is also insufficient.  Defs. Opp. Br., at 17; *see also supra* at 8-11.  The government has not established that Agent Leonard sought or obtained confidential legal advice, *see* Leonard Decl., ¶ 8; *CREW*, 2021 WL 2652852, at *7; nor has it identified any potential litigation for which this Report would be protected work product.[6]

Finally, the government again has not provided any evidence that disclosure of the information would cause reasonably foreseeable harm to the interests protected by any of these privileges.  The government vaguely asserts a "fear of retaliation against Defendants' state and local law enforcement partners," without providing any basis for concluding that such "retaliation" is plausible, or that state and local law enforcement partners would cease to share information with the agency if their communications were disclosed.  Defs. Opp. Br., at 18.  A barebones assertion, even in a declaration from a government official, that the disclosure of the withheld records would "inhibit[]" discussions is not enough.  *Reporters Committee*, 3 F.4th at 372.

### 3.    Exemptions 6 and 7(C) Do Not Justify the Redaction of the Briefing Report.

Exemptions 6 and 7(C) do not provide the government any additional mileage.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute

---

[6] In fact, Agent Leonard's declaration does not even specify that he spoke with lawyers at the U.S. Attorney's office.  *See* Leonard Decl., ¶ 8.

a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7).  For both exemptions, courts must "balance the privacy[] interest against the public interest in disclosure," *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1091 (D.C. Cir. 2014)), while bearing in mind that FOIA "mandates a strong presumption in favor of disclosure, and that the statutory exemptions, which are exclusive, are to be narrowly construed." *Id.* (quoting *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011)).

 Here, the agency has not explained specifically how any of the sources' personal privacy would be harmed by disclosure, suggesting only generally that disclosure may affect the sharing of information between law enforcement agencies in the future.  Leonard Decl., ¶ 11.  This is hardly enough.  *See Hooker v. U.S. Dep't of Health & Hum. Servs.*, 887 F. Supp. 2d 40, 60 (D.D.C. 2012), *aff'd*, No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014); *see also Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1091 (D.C. Cir. 2014).

Even Exemption 7(C) does not bless the blanket withholding of "all of the material in an investigatory record."  *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).  Once again, the government has failed to explain why redaction of only the sources' names and any personal information would not be adequate to protect the privacy of the subjects. *See* 5 U.S.C. § 552(b) (requiring agencies to extract "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt").

## CONCLUSION

For the foregoing reasons, the Nation respectfully requests that the Court deny the Defendants' motion for summary judgment, grant the Nation's cross-motion for summary judgment, and order the Defendants to produce the material withheld from the Trip Report and Briefing Report and to conduct an adequate search for documents responsive to the Nation's FOIA request.

Respectfully submitted,

/s/ David W. DeBruin

| | |
|---|---|
| Gabriel M. Nugent (DC Bar No. 1005924) | David W. DeBruin (DC Bar No. 337626) |
| BARCLAY DAMON LLP | Zachary C. Schauf (DC Bar No. 1021638) |
| 125 East Jefferson Street | JENNER & BLOCK LLP |
| Syracuse, New York 13202 | 1099 New York Avenue, NW |
| Tel.: (315) 425-2836 | Washington, D.C. 20001 |
| Fax: (315) 703-7361 | Tel.: (202) 639-6000 |
| gnugent@barclaydamon.com | Fax: (202) 639-6066 |
| | ddebruin@jenner.com |
| | |
| Dated:  September 3, 2021 | *Attorneys for the Cayuga Nation* |