**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                             )
CAYUGA NATION,             )
                             )
          Plaintiff,       )
                             )
      v.                   )       Civil Action No. 20-2642 (ABJ)
                             )
U.S. DEPARTMENT       )
OF INTERIOR,          )
                             )
         Defendant.     )
_____)

## MEMORANDUM OPINION

On September 18, 2020, plaintiff Cayuga Nation filed this complaint against the United States Department of Interior ("DOI") alleging that DOI violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, by improperly withholding agency records. Compl. [Dkt. # 1] ¶ 1. Both parties have moved for summary judgment and the motions are fully briefed. *See* Def.'s Mot. for Summ. J. [Dkt. # 16] ("Def.'s Mot."); Pl.'s Cross-Mot. for Summ. J. and Opp. to Def.'s Mot. [Dkt. # 18] ("Pl.'s Mot."); Def.'s Reply in Supp. of Mot. and Opp. to Pl.'s Mot. [Dkt. # 23] ("Def.'s Reply"); Pl.'s Reply in Supp. of Pl.'s Mot. [Dkt. # 25] ("Pl.'s Reply"). For the following reasons, both motions will be **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

"The Nation is a sovereign Indian nation with a 64,015-acre reservation located in upstate New York, in what are now known as Seneca and Cayuga Counties." Def.'s Statement of Material Facts Not in Genuine Dispute [Dkt. # 16-1] ("Def.'s SOF") ¶ 1. "In 2018, the Nation exercised its sovereign authority to create a police force and exercise its criminal jurisdiction." Pl.'s Statement

1

of Material Facts Not in Genuine Dispute [Dkt. # 18-16] ("Pl.'s SOF") ¶ 2.  After that, the Nation

applied for "an Originating Agency Identifier (ORI) provided by the FBI," but was denied.  *Id.* ¶

18.  The ORI would enable the Nation's police force "to coordinate its activities with other federal,

state, and local law enforcement entities by accessing the Criminal Justice Information Services

(CJIS) systems maintained by the FBI."  *Id.*

On March 12, 2020, Jimmy Gibson, Jr., and Bryan Bald Eagle – employees of the Bureau

of Indian Affairs ("BIA") – notified the Nation that they would be visiting the reservation and

requested a tour as well as a "meeting with Nation leadership and court and law enforcement

officials."  Def.'s SOF ¶ 2.  Gibson and Bald Eagle conducted the visit and met with officials on

March 17, 2020.  *Id.* ¶ 3.  Their activities included meeting "with members of the Cayuga Nation

Council (the Nation's governing body), at a Nation property in Seneca Falls, New York; and with

officials representing the Nation's court system and police department, at the Nation's courthouse

and police station in Union Springs, New York."  *Id.*

On July 27, 2020, the Nation submitted a FOIA request to BIA asking for:

> 1.  Any electronic or hard copy materials related to the visit by [] Bryan
> Bald Eagle and Jimmy Gibson, Jr. to the Cayuga Nation reservation in
> Cayuga and Seneca Counties (NY) during the week of March 16, 2020
> (including any notes, memoranda, correspondence, draft or final reports
> related to the visit and any communications with NY state, county or local
> government officials);
>
> 2.  Any electronic or hard-copy notes, memoranda, correspondence, draft or
> final reports related to the Cayuga Nation Police Force's March 28, 2019
> and May 20, 2020 applications for an Originating Agency Identifier (ORI)
> from the Federal Bureau of Investigation (NCIC/CJIS).

Def.'s SOF ¶ 5; Pl.'s SOF ¶ 19.

The agency responded and produced records over a period of time, and only two of the

documents, both of which contained multiple redactions, remain in dispute.  Count II of the

2

complaint alleges that the records should have been produced in full, and the Court has reviewed unredacted versions of each document *in camera*.  *See* Notice of Delivery of Docs. for *In Camera* Review [Dkt. # 26].  Count I of the complaint alleges that defendant failed to conduct an adequate search:  in particular, plaintiff complains that defendant did not contact Gibson or Bald Eagle to ask whether either of them had any responsive documents in their possession.  Pl.'s Mot. at 15–16.

The first record in dispute is a five-page "Trip Report," prepared by Gibson concerning the meetings he and Bald Eagle attended during their March 2020 visit to the Cayuga Nation reservation.  Three pages were released in full, and two pages were redacted pursuant to FOIA Exemption 5.  Def.'s SOF ¶ 14; *see also* Ex. L to Pl.'s Mot. [Dkt. # 18-14] ("Redacted Trip Report").

The second document is a "Briefing Report," which defendant describes as "a working document written by a Special Agent in Charge for the BIA OJS[1] and updated several times to provide BIA-OJS leadership with an ongoing analysis about emergencies, disputes, and significant incidents at Cayuga Nation that occurred in February and March of 2020."  Def.'s SOF ¶ 15.  It was redacted "pursuant to FOIA Exemptions 5, 6, 7(C), and 7(D)."  Def.'s SOF ¶ 15; *see also* Ex. M to Pl.'s Mot. [Dkt. # 18-15] ("Redacted Briefing Report").

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the

---

1       OJS stands for Office of Justice Services.  Def.'s Mot. at 9.

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 247–48. A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).

"[S]ummary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287

(D.C. Cir. 2006).  *See also Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) ("In a suit seeking agency documents—whether under the Privacy Act or FOIA—'[a]t the summary judgment stage . . . the court may rely on a reasonably detailed affidavit.'").  A plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

In a FOIA case, the burden rests with "the agency to sustain its action," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), quoting 5 U.S.C. § 552(a)(4)(B), and "the vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  *See also Wheeler v. CIA*, 271 F. Supp. 2d 132, 136 (D.D.C. 2003) (the agency "bears the burden of sustaining its decision to claim an exemption from disclosure"), citing 5 U.S.C. § 552a(g)(3)(A).  The district court reviews agency decisions *de novo*.  5 U.S.C. § 552(a)(4)(B).

## ANALYSIS

### I.      Count I:  The adequacy of the search

"FOIA demands only a reasonable search tailored to the nature of a particular request."  *Campbell v. DOJ,* 164 F.3d 20, 28 (D.C. Cir. 1998).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003).  The agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," and it "cannot limit its search to only one record system if there are others that are likely to turn

5

up the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The proper inquiry is not whether additional documents might exist, but whether the agency

conducted a search "reasonably calculated to uncover all relevant documents." *Id.*

Defendant has not moved for summary judgment on Count I, and it offers no argument as

to why its search was adequate. Instead, defendant maintains that plaintiff waived its right to raise

the issue. Def.'s Reply at 1. It cites a joint status report filed with the Court in February of 2021,

Joint Status Report [Dkt. # 13] ("2/19/21 JSR"), as well a series of e-mails between the parties

regarding the contents of the status report. *See* Ex. 1 to Def.'s Reply [Dkt. # 23-4] ("Ex. 1 E-

mails").

The status report does not explicitly waive plaintiff's contentions in Count I, the claim has

never been withdrawn by plaintiff, and the Court has not dismissed it. The status report simply

states:

> Plaintiff still challenges the adequacy of the redactions on the BIA Trip
> Report, and the withholding of the Office of Justice Services Internal
> Briefing Report entitled "Cayuga Briefing Report 03132020.doc."
> Accordingly, the Parties are prepared to file dispositive motions regarding
> the adequacy of redactions of the BIA Trip Report and the withholding of
> the report entitled Cayuga Briefing Report 03132020.doc.

2/19/21 JSR at 1–2.

The Court is not inclined to deem the mere failure to include Count One in this summary

to be a knowing and voluntary waiver of the claim. While judges in this district have held plaintiffs

to their previous concessions narrowing the terms of FOIA disputes, those cases tend to involve

explicit agreements. *See, e.g.*, *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 22

(D.D.C. 2014) ("The plain meaning of the joint status report makes clear that the plaintiff narrowed

her FOIA request to require CBP to produce only [certain documents]," and the joint status report

6

was not "ambiguous on this point."); *Am. Ctr. for L. & Just. v. DOJ.*, 325 F. Supp. 3d 162, 168

(D.D.C. 2018) ("[W]here sophisticated parties to a FOIA case have agreed to narrow the issues in

a written status report, they generally may be held to their agreement under traditional waiver

principles."). By contrast, here there is no express statement that would serve as the basis for

finding a waiver; this is not a situation in which "a plaintiff agrees in a joint status report *not to

challenge* the adequacy of the government's search." *Am. Ctr.*, 325 F. Supp. 3d at 169 (emphasis

added).[2]

But even if the parties' silence on the issue in the status report could be interpreted as a

waiver, *see, e.g.*, *Molton, Allen & Williams, Inc. v. Harris*, 613 F.2d 1176, 1179 (D.C. Cir. 1980)

("The common law concept of waiver . . . includes inferences from the words and actions of the

parties. The district court therefore erred when it limited waiver to express statements."), the Court

would still decline to foreclose the issue. It is within the trial court's discretion to determine

whether to enforce a FOIA waiver. *See Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 679,

683 (D.C. Cir. 2017) ("the government may not invoke Price's FOIA waiver as a basis for denying

him access to the records he requests because, in this case, the government has given us no

adequate rationale for enforcing this waiver in light of the public-policy harms Price has

identified") (emphasis omitted); *see also Am. Ctr.*, 325 F.Supp.3d at 169 ("Even where a waiver

---

2       The e-mails defense counsel has submitted do not support a different outcome. Defense
counsel asked, "[w]ith respect to the motion, am I correct in understanding that the sole issues that
we are placing before the Court are the remaining redactions to the trip report?" Ex. 1 E-mails at
3. Counsel then followed up – before plaintiff responded at all – with an attached draft setting out
a dispositive motions schedule. *Id.* at 2. Plaintiff responded to the draft, rather than the question
posed in the earlier e-mail, by saying "[t]he schedule looks ok, but there was one more document.
Let me surface that and get back to you." *Id.* At no point was there any discussion, much less an
agreement, concerning Count I, and there are insufficient acts or words on plaintiff's part to
support an inference that it was knowingly giving up a claim.

is knowing and voluntary, courts will sometimes decline to enforce the waiver where it would be unjust to do so."). And this is a situation where enforcing a waiver would be unreasonable because, as plaintiff emphasizes, the inadequacy of the search was obvious when the government described it in its motion for summary judgment. Pl.'s Reply at 4–5. Moreover, the effort involved in remedying the problem is minimal.

The government explains in a declaration it submitted in support of its motion that it only contacted a single person in order to fulfill plaintiff's first request.[3]  *See* Decl. of Rebecca J. Smith, Ex. 1 to Def.'s Mot. [Dkt. # 16-2] ("Smith Decl.") ¶ 4.[4]  The declarant does not explain what search terms were used or why she came to the conclusion that, after identifying the Trip Report, "[n]o other Records Schedule or Series maintained by this office was likely to produce responsive documents for this request." Smith Decl. ¶ 6. Moreover, the person Smith asked to search for records – the BIA Acting Regional Director – supervised the March 2020 visit that is the subject of plaintiff's request, but did not go on the trip. *Id.* ¶ 4.

In failing to reach out to either Bryan Bald Eagle or Jimmy Gibson, Jr., the government's search was not "reasonably calculated to uncover all relevant documents." *Oglesby,* 920 F.2d at 68, as both were likely to have "notes, memoranda, correspondence, draft or final reports related to the visit." Smith Decl. ¶ 3. The relevance of these two men should have been even more obvious after the Trip Report was located, and it turned out to have been written by Gibson. The D.C. Circuit has made clear that "agencies [must] make more than perfunctory searches and,

---

3       The first request was for "materials related to the visit by [] Bryan Bald Eagle and Jimmy Gibson, Jr. to the Cayuga Nation reservation in Cayuga and Seneca Counties (NY) during the week of March 16, 2020." Def.'s SOF ¶ 5.

4       Smith is "the FOIA Coordinator and Tribal Relations Specialist for the Department of the Interior, Bureau of Indian Affairs (BIA) Eastern Region." Smith Decl. ¶ 1.

indeed, [must] follow through on obvious leads to discover requested documents." *Valencia–Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325 (D.C. Cir. 1999). Here, the agency did not follow through on obvious leads: the names of Bryan Bald Eagle and Jimmy Gibson, Jr. were prominently mentioned in the FOIA request itself. *See also id.* at 327 ("if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search").

Furthermore, "[t]he description of the search is too cursory to persuade the Court that the search was adequate." *Schaerr v. DOJ.*, 435 F. Supp. 3d 99, 122 (D.D.C. 2020). The declarant states, "I contacted the ARD and requested a copy of all documents related to the 'March 16, 2020 visit to the Cayuga Nation,'" Smith Decl. ¶ 4, and she asserts, "[n]o other Records Schedule or Series maintained by this office was likely to produce responsive documents for this request." *Id.* ¶ 6. But that is highly conclusory. For these reasons, the case will be remanded to the agency to do what it should have done at the outset.

## II.     Count II:  Portions of documents improperly withheld

FOIA generally requires federal agencies to disclose records upon request. *See* 5 U.S.C. § 552(a)(3)(A). The only exception is for records that fall into one, or more, of the nine narrowly construed exemptions. *See id.* § 552(b); *see also FBI v. Abramson*, 456 U.S. 615, 630 (1982). "[W]hen an agency seeks to withhold information, it must provide a relatively detailed justification" for the withholding, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (citation and internal quotation marks omitted), through a *Vaughn* index, an affidavit, or by other means. *See Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994), citing *Vaughn v. United States*, 936 F.2d 862, 867 (6th Cir. 1991). The general rule in FOIA cases is that:

> If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by

> contrary evidence in the record or by evidence of the agency's bad faith,
> then summary judgment is warranted on the basis of the affidavit alone.

*ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

After asserting and explaining the use of particular exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would be effectively be disclosed." *Johnson*, 310 F.3d at 776, quoting *Mead Data Cent.*, 566 F.2d at 261.

In 2016, Congress added language to FOIA, mandating that "an agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by [the] exemption . . . or disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). As the D.C. Circuit has explained, "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) ("*Reporters Committee v. FBI*"), quoting H.R. Rep. No. 114-391, at 9 (2016). "In that way, the foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Id.* (brackets and internal quotation marks omitted).

### A.  Trip Report

The Trip Report was disclosed in its entirety with the exception of what defendant describes as "short paragraphs found on the last two pages."  Def.'s Mot. at 4.  These portions are withheld pursuant to FOIA Exemption 5.  *Id.*

Exemption 5 authorizes an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative process privilege.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–54 (1975).

### i.  Deliberative process privilege

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001), quoting *Sears*, 421 U.S. at 150.  The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government."  *Id.* at 8–9, quoting *Sears*, 421 U.S. at 151.  To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative."  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

A document is predecisional if "it was generated before the adoption of an agency policy," and it is deliberative if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.   "[R]ecommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" typically qualify as deliberative.  *Id.*

The Supreme Court has recently clarified that "determining whether an agency's position is final for purposes of the deliberative process privilege is a functional rather than formal inquiry," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 788 (2021), and the privilege "shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it."  *Id.* at 785.  The Court emphasized that courts need to analyze whether a draft "communicates a policy on which the agency has settled," rather than merely "whether a document is last in line."  *Id.* at 786.

In addition, the D.C. Circuit issued a clear instruction in *Reporters Committee v. FBI* that the foreseeable harm requirement must be enforced with rigor in the deliberative process privilege context; the government cannot rely on a "perfunctory statement that disclosure . . . would jeopardize the free exchange of information."  3 F.4th at 370 (internal quotation marks omitted). The agency must provide the court with "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Id.*; *see also Jud. Watch, Inc. v. DOJ*, No. 17-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019) (The reasonable foreseeability of harm standard requires the withholding agency to "connect[] the harms . . . to the information withheld, such as by providing context or insight into the specific decision-making

processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records.).

The report in question summarizes a meeting between the two BIA representatives and "the Seneca Falls Police Department, Seneca & Cayuga Sheriff's Department, New York State Police, District Attorney's Office and Seneca County District Attorney Office."  Redacted Trip Report at 3.  The summary is followed by the heading "Note:" and the two bullet points below consist of observations by the author, which have been withheld pursuant to the deliberative process privilege.

Defendant asserts that Exemption 5 was properly invoked to shield "the writer's thoughts and impressions regarding the matters discussed at the meeting," and the paragraphs – which are each one sentence long – included "items for the writer's supervisors to consider in reaching a decision."  Def.'s Mot. at 4–5; *see also* Smith Decl. ¶ 6(b) (The redacted portion "continues the writer's thoughts and impressions regarding the readers (*sic*) perception of the issues, and the second part of that section continues the writer's recommendations for supervisors to consider in reaching a decision.").

Plaintiff points out that the use of vague phrasing "in reaching a decision" leads to another question:  what decision?  Pl.'s Reply at 5.  The deliberative process privilege is meant to protect the "give-and-take of the consultative process," *Coastal States*, 617 F.2d at 866, but it is not meant to shield all communications between a subordinate and a superior.  *See Sears*, 421 U.S. at 150 (The deliberative process privilege shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.") (internal quotation marks omitted).

Defendant submits that the information was "intended to be used by the writer's supervisors on a continual basis to analyze and monitor the issues and volatile events between two rival factions in the Cayuga Nation, and to make future decisions on how the BIA should respond, or if it should respond at all."  Def.'s Reply at 5–6.  This explanation is still vague and conclusory; defendant asserts that it was generally monitoring the Cayuga Nation's situation, and that there may have been decisions to make in the future.

As the Supreme Court has recognized, "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions."  *Sears*, 421 U.S. at 143 n.18.  But "[t]he agency bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process."  *Paisley v. CIA,* 712 F. 2d 686, 698 (D.C. Cir. 1983); *see also Coastal States*, 617 F.2d at 868 (The burden is on the agency to establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process.").  If the documents in question "are not a part of a clear 'process' leading to a final decision on the issue . . . they are less likely to be properly characterized as predecisional."  *Coastal States*, 617 F.2d at 868, citing *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975); *see also Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document *was generated as part of a definable decision-making process*.") (emphasis added).  Here, the process is extremely ill-defined.

Moreover, the Court's *in camera* review of the withheld portion here reveals that while the two sentences do include the writer's impressions, they do not consider or recommend any future

action on the part of the agency, and they do not appear to be tied to any particular agency decision or decision making process.  Therefore, the Court finds that defendant has failed to meet its burden to show that the withheld sentences on page four of the Trip Report just before the list of "Attendees" are covered by the deliberative process privilege, and they must be produced.[5]

### ii.  Attorney-client privilege

The second withheld portion of the Trip Report is a summary of a meeting between BIA representatives and three individuals who are each identified as "US Attorney."  Redacted Trip Report at 4–5.  The redacted paragraphs focus on statements made by James Kennedy, then serving as the United States Attorney for the Western District of New York.  *See* United States Department of Justice, *Former U.S. Attorney James P. Kennedy, Jr.*, https://www.justice.gov/archives/usao-wdny/former-us-attorney-james-p-kennedy-jr.   Defendant asserts that the second redacted paragraph was properly withheld pursuant to the attorney-client privilege, as it "contained the give-and-take between the BIA representatives and legal counsel, including the resulting legal advice provided by the United States Attorney."  Def.'s Mot. at 5.

Although Exemption 5 "does not itself create a government attorney-client privilege," the privilege

---

[5]     Even if the two sentences could fall under some broad definition of "predecisional," the Court would order the agency to produce them because it has not identified what harm would occur if they were disclosed.  *See* 5 U.S.C. § 552(a)(8)(A)(i) ("an agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by the exemption or disclosure is prohibited by law.").  The agency did not identify any resulting harm in its initial motion; it states in a supplemental declaration attached to its reply brief that "the Cayuga Nation is currently experiencing a dispute between two rival factions within the Nation and exposure of the writer's impressions and opinions could be twisted by one side or the other as BIA's attempt to influence the internal governance of the Nation."  Suppl. Decl. of Rebecca J. Smith [Dkt. # 23-2] ¶ 3.  But this explanation is speculative, and it does not bear upon how disclosure "would harm *an interest protected by the exemption*."  5 U.S.C. § 552(a)(8)(A)(i) (emphasis added).

> has a proper role to play in exemption five cases . . . . In order to ensure that
> a client receives the best possible legal advice, based on a full and frank
> discussion with his attorney, the attorney-client privilege assures him that
> confidential communications to his attorney will not be disclosed without
> his consent.  We see no reason why this same protection should not be
> extended   to   an   agency's   communications   with   its   attorney
> under exemption five.

*In re Lindsey*, 158 F.3d 1263, 1269 (D.C. Cir. 1998), quoting *Mead Data Cent.*, 566 F.2d at 252.

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862.  The privilege also protects communications from attorneys to their clients that "rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984).   In the FOIA context, the agency is often the "client" and the agency's lawyers are the "attorneys" for purposes of the attorney-client privilege.  *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998), citing *Coastal States*, 617 F.2d at 863.

One issue here is that the attorney whose statements are memorialized – James Kennedy – is not identified as an attorney for the agency.  He was the United States Attorney for the Western District of New York at the time.  *See* Redacted Trip Report at 5 (listing "James Kennedy – U.S. Attorney").  And the *in camera* review did not reveal that Kennedy was offering an opinion based on information confidentially provided to him by the BIA; he appeared to be summarizing events of which he had personal knowledge.

Defendant asserts that "the Department of Justice is the legal representative of all of the United States (the Executive, Legislative, and the Judiciary branches), its agencies, or officers whenever the interest of the United States or its agencies are at issue." Def.'s Reply at 9, citing 28

U.S.C. § 517.  But, as plaintiff notes, "[s]tatutes that provide that the Department of Justice *can* represent the BIA in litigation do not establish that the U.S. Attorneys *were* representing Gibson and Bald Eagle in a legal capacity or providing privileged legal advice."  Pl.'s Reply at 9.

Furthermore, it is not apparent from a review of the document itself that the U.S. Attorney was providing the agency with advice or guidance.  Because it is the claimant's burden "to present to the court sufficient facts to establish the privilege," *In re Sealed Case*, 737 F.2d at 99, defendant's motion for summary judgment on this issue will be denied.  Defendant must either disclose the redacted sentences or supply a more detailed description of the relationship between the participants at the meeting and the purpose of the meeting by April 25, 2022.[6]

### B.  Briefing Report

The Briefing Report was redacted pursuant to multiple FOIA provisions.  The Court will start with the withholdings that rest solely on Exemption 5.

### i.  Materials withheld under the deliberative process privilege only

On page one, there is a single sentence withheld pursuant to Exemption 5 within a paragraph describing "Recent Significant Events."  Redacted Briefing Report at 1.  And on page three, a sentence under "District Office Response and Other Coordination" is withheld.  *Id.* at 3.

The agency argues that the redacted sentence under "Recent Significant Events" on page one was properly withheld pursuant to the deliberative process privilege.  Def.'s Mot. at 9.  But

---

6       In its reply brief, defendant revives the work product argument that it failed to detail in its initial motion.  Def.'s Reply at 10.  The work product doctrine applies to materials "prepared in anticipation of litigation or for trial."  *Jud. Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed R. Civ. P. 26(b)(3).  Defendant refers to the general existence of a conflict between "each faction within the Cayuga Nation," Def.'s Reply at 10, but not to any particular litigation or potential litigation in which the Department was a party or the U.S. Attorney was involved, so the work product doctrine does not apply.

this sentence is simply part of the factual recitation contained in the rest of the paragraph.  While it conveys reported information that has not been independently verified, there is nothing deliberative about it and it is untethered to any discernible decision-making process.  *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not . . . protect material that is purely factual.").  Also, the agency failed to identify a foreseeable harm beyond reciting the logic of the exemption itself:  "disclosure of this information would reveal the details of intra-agency decision-making that could chill the open and frank exchange of information that occurs when BIA officials are developing a plan of action."  Def.'s Mot. at 11.  Since the agency has not carried its burden to show that the sentence is privileged, it must be produced.

The first sentence under "District Office Response and Other Coordination" on page three must be produced for similar reasons.  It reports a fact or, at best, a perception; the agency has made no attempt to show in anything other than conclusory terms how this particular statement is tied to a decision-making process, and it is not deliberative.  Nor has the agency articulated any harm that would result from its disclosure.

### ii.  Materials withheld as subject to the attorney-client privilege

All of the text under the heading "Legal and Jurisdictional Issues" on pages two and three was withheld pursuant to the attorney-client privilege.  The Court's *in camera* review confirms that this section contains legal advice and analysis provided by the District Office, and that none of the withheld material is segregable.  Moreover, the harm is apparent in that "disclosure of privileged information  is  a harm in  and  of  itself" when  it  comes  to  the  attorney-client

relationship.  *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. 19-cv-980, 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021).  Judgment will be entered in favor of the defendant on this issue.[7]

### iii.  Multi-exemption withholdings

That brings the Court to the portions of the report that were withheld under Exemptions 5, 6, 7(C), and 7(D).[8]  The agency withheld two paragraphs under "Recent Significant Events" on page one on these grounds, as well as the entire section of the report under the heading "District Office Response and Other Coordination" with the exception of the single sentence addressed above.

Exemption 7(C) protects "records or information compiled for law enforcement purposes" if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Exemption 7(D) protects "records or information compiled for law enforcement purposes" if disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis."  5 U.S.C. § 552(b)(7)(D).

Under both exemptions, there is a threshold question:  were records compiled for "law enforcement purposes?"  5 U.S.C. § 552(b)(7).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  *Mittleman v. Off. of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996).  As the Court of Appeals has explained, "[i]n assessing whether records are compiled for law enforcement

---

7       The agency also invoked exemptions 6, 7(C), and 7(D) to shield a portion of Legal and Jurisdictional issues on page three, but since that the Court has found that attorney-client privilege applies, it need not consider the other grounds for withholding.

8       The government is no longer relying on Exemption 7(E).  *See* Decl. of Cynthia Elia [Dkt. # 16-3] ("Elia Decl.") at 3 n.1.

purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding . . . . [T]he purpose of the investigatory files is the critical factor." *Jefferson v. DOJ, Off. of Pro. Resp.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotation marks omitted); *see also id.,* citing *Rural Hous. All. v. Dep't of Agric.,* 498 F.2d 73, 82 (D.C. Cir. 1974) ("[I]f the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees.").

Plaintiff does not appear to contest that the record was prepared for law enforcement purposes, meeting the prerequisite for Exemption 7.  *See* Pl.'s Mot. at 33.  The Briefing Report bears the admonition on every page:  "This report is the property of the BIA-OJS.  Neither it nor its contents may be disseminated outside the agency to which it is loaned."  Redacted Briefing Report.  The BIA Office of Justice Services is a law enforcement agency; it has jurisdiction over crimes committed within Indian Country.  *See* 25 U.S.C. § 2802(d)(1) ("The Secretary shall establish within the Office of Justice Services a separate Branch of Criminal Investigations which, . . . shall be responsible for the investigation, and presentation for prosecution, of cases involving violations of sections 1152 and 1153 of title 18 within Indian country.").

Moreover, the events described in the Briefing Report involve law enforcement, and the document as a whole was generated with that function in mind.  *See* Decl. of Terrell Leonard [Dkt. # 16-4] ("Leonard Decl.") ¶¶ 7–8 ("[T]o recommend how or if OJS should address significant events occurring [at the reservation], I conducted research on the matter, including gathering information about the events from a number of state and local law enforcement partners."  "I also

contacted the United States Attorney's Office for advice on the legal and jurisdictional issues that the situation implicated.").

When a law enforcement agency asserts a 7(C) Exemption, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. DOJ,* 968 F.2d 1276, 1281 (D.C. Cir. 1992). Where a legitimate privacy interest exists, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. Crim. Div. of DOJ,* 475 F.3d 381, 387 (D.C. Cir. 2007), quoting *Nat'l Archives & Recs. Admin. v. Favish,* 541 U.S. 157, 172, (2004) (internal quotation marks omitted). Moreover,

> where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Favish*, 541 U.S. at 174.

Like Exemption 7(C), Exemption 6 shields private personal information.[9]   But "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *DOJ v. Reps. Comm.*, 489 U.S. 749, 756 (1989).  As a result, courts address Exemption 7(C) before reaching Exemption 6, and the Court will follow that procedure here.  *See, e.g.*, *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health, Dep't of Health & Hum. Servs.*, 745 F.3d 535, 541 (D.C. Cir. 2014).

In order to support a 7(D) Exemption, "it is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011).  Instead the agency must either point to an "express assurance of confidentiality" or demonstrate that the source "spoke with an understanding that the communication would remain confidential." *Id.*  If the agency does "point to more narrowly defined circumstances that . . . support the inference of confidentiality," then that is the end of the inquiry. *Id.*, quoting *DOJ v. Landano,* 508 U.S. 165, 179 (1993) (internal quotation marks omitted). "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests." *Id.*

---

9      Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  To determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy, courts employ a two-step test.  First:  would disclosure "compromise a substantial, as opposed to a *de minimis*, privacy interest?" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002), quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874.  If so, "the court then must weigh that interest against the public interest in the release of the records in order to determine whether, on balance, disclosure would [cause] a clearly unwarranted invasion of personal privacy." *Id.* (internal quotation marks omitted).  "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *Am. Immigr. L. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016), quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994).

### a. Recent Significant Events

Two of the paragraphs under the heading "Recent Significant Events" on page one have been redacted entirely. Redacted Briefing Report at 1.

The government's assertion that the Exemption 5 deliberative process privilege applies to this section falls flat because there is no deliberation within this section; as the heading implies, the information is a factual summary of recent events. While those recent events may be "volatile," as the government asserts, Def.'s Reply at 18, that circumstance does not bear on the determination of whether the writing is deliberative and predecisional. And a review of the redacted material reveals that while it conveys the observations of others, it does not transmit the author's impressions or recommendations for consideration by the agency. So the government's decision to withhold the majority of this section as deliberative, *see* Def.'s Reply at 19, is not supported.

That being said, some targeted withholdings are justified.

The first redacted paragraph describes a complaint from a third party who is a private individual. Individuals who complain to a law enforcement agency have a substantial privacy interest in their identity. *See Schrecker v. DOJ*, 349 F.3d 657, 666 (D.C. Cir. 2003) ("witnesses, informants, and the investigating agents – have a substantial interest in seeing that their participation remains secret") (internal quotation marks omitted). So "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The Court's *in camera* review confirms that revealing the details of the complaint would put the complainant's identity at risk without advancing the public interest in any significant way.

Most of the paragraph explains the nature of the complaint, but not any actions the agency may have taken in response.  Because the description has to do with a private individual's report, not how the agency handled the report, and there are no indications that the agency engaged in illegal conduct, the risk to the complainant outweighs the minimal benefit to the public interest.

So the agency is permitted to redact much of this paragraph under Exemption 7(C).  However, the first sentence must be produced because it does nothing other than reveal the existence of a complaint.   Also, the last two sentences must be produced, albeit with the complainant's name withheld, because those two sentences do implicate the agency's response and do not put the complainant's identity at risk.[10]

The second redacted paragraph does not implicate the identity of private parties, but according to the agency's declarant, it recounts information provided by state and local law enforcement partners on a confidential basis.

> My contacts at these law enforcement agencies provided me their views, opinions, and other non-public information on a law-enforcement-to-law-enforcement basis, and I assured those contacts that I would not identify them or share the information outside my law enforcement organization.

Leonard Decl. ¶ 7.

Sources that work in law enforcement themselves may qualify under Exemption 7(D), just as private parties who supply information do.  *See Lesar v. DOJ*, 636 F.2d 472, 491 (D.C. Cir. 1980) ("We hold therefore that the word 'source' in Exemption 7(D) includes not only individuals such as private citizens and paid informants but also entities such as the state and

---

10     The government rightly argues that context is important in determining what might reveal a person's identity, and the Court respects the need for caution in ensuring that it does not inadvertently order the government to reveal personal information.  But *in camera* review makes clear that there is segregable information that does not reveal the complainant's identity.

local law enforcement agencies here involved.").  And the names of individual law enforcement officers may properly be redacted in any event under 7(C).  *See Roth*, 642 F.3d at 1173 (the agency "sought to protect the privacy interests of local law enforcement employees; third parties merely mentioned in FBI records; state, local, and non-FBI federal government personnel") (internal quotation marks omitted).

To support a withholding under Exemption 7(D) based on an express assurance of confidentiality,

> the [agency] must present probative evidence that the source did in fact receive an express grant of confidentiality.  Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources.  No matter which method the agency adopts to meet its burden of proof, its declarations must permit meaningful judicial review by providing a sufficiently detailed explanation of the basis for the agency's conclusion.

*Campbell v. DOJ*, 164 F.3d 20, 34 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) (internal quotation marks and citations omitted).

Here, the agency provided the declaration of the investigator with personal knowledge of express assurances he had provided, and it goes on to detail the steps taken to ensure the confidentiality of the information he gathered.  *See* Leonard Decl. ¶ 11 (Leonard has "not shared this Briefing Report or the information in it with anyone outside of the Department of the Interior or the Department of Justice," the footer on each page reflects that "[t]his report is the property of the BIA-OJS.  Neither it nor its contents may be disseminated outside the agency to which is it loaned," and revealing non-public information gathered "would jeopardize future law-enforcement-to-law-enforcement information sharing, and would negatively impact OJS's future

law enforcement efforts at Cayuga and elsewhere."). Therefore, the basis for withholding the identity of the informants has been established.[11]

Furthermore, *in camera* review confirms that there is no segregable material in this paragraph, as producing the information would reveal the source of the information. Therefore, this paragraph was properly withheld, as there is no balancing under Exemption 7(D). *See Roth*, 642 F.3d at 1184–85, quoting 5 U.S.C. § 552(b)(7)(D) (If "records 'could reasonably be expected to disclose the identity of a confidential source,' . . . that ends the matter, and the [agency] is entitled to withhold the records under Exemption 7(D).").

### b. District Office Response and Other Coordination

The agency withheld all but the first sentence of the section of the report entitled "District Office Response and Other Coordination" under Exemption 7(D), and the declarant has averred that the information was provided by a confidential source to law enforcement. Almost every sentence in this withheld section directly reports what a confidential source stated to the author of the report. The Court has already concluded that (1) this document was prepared for law enforcement purposes; and (2) there was an express grant of confidentiality in this case, and that grant of confidentiality applies to all of the sources referenced in the withheld paragraphs. So the

---

11    The "information furnished" by the source can also be withheld under Exemption 7(D) if the information was "compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation." 5 U.S.C. § 552(b)(7)(D). But notwithstanding defendant's reference to this provision, *see* Def.'s Reply at 14, the agency does not suggest that the BIA was conducting an investigation that implicated national security, and Leonard's declaration does not aver that he prepared the Briefing Report in the course of any identifiable criminal investigation. He states: "The Briefing Report was a working document I wrote and updated several times to provide BIA-OJS leadership with ongoing analysis about emergencies, disputes, and significant incidents at Cayuga Nation that occurred in February and March of 2020." Leonard Decl. ¶ 6; *see also id.* ¶ 9 (Briefing Report was used "to update [his] leadership on the developing situation at Cayuga").

only remaining question is whether any of this information is segregable, and much of that determination relates to whether disclosing the information reported would put the identity of the source at risk.  *See Roth*, 642 F.3d at 1185 (the agency has burden to show "that the withheld information came from or could identify a confidential source"); *see also Irons v. F.B.I.*, 880 F.2d 1446, 1457 (1st Cir. 1989), quoting 5 U.S.C. § 552(b)(7)(D) (Exemption 7(D) protects "information that could reveal 'the identity of a confidential source.'").

In this instance, the declarant has established that the information is inextricably tied to the source's identity, and the Court's *in camera* review confirms that, with the exception of the third paragraph, which consists of a single sentence unrelated to the sources, there is nothing that can be segregated.  That sentence must be produced, but the rest of the withholdings are justified.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part, and plaintiff's motion is also **GRANTED** in part and **DENIED** in part.

With respect to Count I, the Court finds that the search initially conducted by the agency was inadequate, and the matter will be remanded to the agency for further action.  The parties must submit a joint status report concerning the results of that search and whether further action is required by May 9, 2022.

As to Count II, with respect to the Trip Report, defendant must disclose the section on page four under the heading "Note."  Also, defendant must either disclose the portion of the Trip Report on pages 4–5 summarizing the meeting with the then-U.S. Attorney James Kennedy or supply additional information justifying the invocation of the attorney-client privilege by April 25, 2022.

Defendant also must disclose the following portions of the Briefing Report:

- The sixth sentence in the first paragraph under "Recent Significant Events" on page one.

- The first sentence of the second paragraph under "Recent Significant Events" on page one.

- The last two sentences of the second paragraph under "Recent Significant Events" on page one, with the caveat that the complainant's name may still be withheld.

- The portion of the sentence coming after the semi-colon in the first paragraph under "District Office Response and Other Coordination" on page three.

- The first sentence of the second paragraph under "District Office Response and Other Coordination" on page three.

- The third paragraph under "District Office Response and Other Coordination" on page three.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  March 25, 2022